MORRIS v. UNITED STATES.*

(Circuit Court of Appeals, Eighth Circuit. March 17, 1908.)

No. 2,677.

1. CRIMINAL LAW—NATURE OF OFFENSE—FELONY OR MISDEMEANOR.

There are no crimes or offenses cognizable in the federal courts outside of maritime or international law or treaties except such as are created and defined by act of Congress, and where the statute designates and denounces a crime of the character or class which at common law was regarded as a felony, without naming it as a misdemeanor, it is to be classed as a felony, but not if it is termed by the statute a misdemeanor. If the statute adopts a state statute as to an offense made a felony by the state law, it may be so treated by the federal courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 29–31.]

2. INDICTMENT AND INFORMATION—JOINDER OF OFFENSES—OFFENSES OF SAME CLASS.

The offenses created by the Oleomargarine Act Aug. 2, 1886, c. 840, 24 Stat. 209 (U. S. Comp. St. 1901, p. 2228), were unknown to the common law, and are all merely statutory misdemeanors and of the same class regardless of the various penalties prescribed, and charges under its different provisions may be joined in the same indictment under Rev. St. § 1024 (U. S. Comp. St. 1901, p. 720).

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, §§ 419, 420.]

3. JURY—COMPETENCY OF JURORS IN FEDERAL COURTS—PRIOR SERVICE.

Rev. St. § 812 (U. S. Comp. St. 1901, p. 627), which provides that "no person shall be summoned as a juror in any Circuit or District Court more than once in two years and it shall be sufficient cause of challenge to any juror called to be sworn in any case that he has been summoned and attended said court as juror at any term of said court held within two years prior to the time of such challenge" as modified by Act June 30, 1879, c. 52, § 2, 21 Stat. 43 (U. S. Comp. St. 1901, p. 624), by reducing the time to one year, prescribes the rule of procedure in the federal courts to the exclusion of any state statute or rule, and under such provisions it is not ground of challenge to a juror that he has served as a juror within one year unless it was in the same court.

4. INTERNAL REVENUE—PROSECUTION FOR CARRYING ON BUSINESS WITHOUT PAYING SPECIAL TAX—ISSUES AND BURDEN OF PROOF.

In a prosecution for carrying on a business without having paid the internal revenue tax required by statute it is sufficient for the government to prove that defendant carried on the business at a certain time and place and payment of the tax is a matter of defense, which if relied on must be proved by defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Internal Revenue, § 149.]

5. INDICTMENT AND INFORMATION—MODE OF MAKING OBJECTIONS—OBJECTING TO INTRODUCTION OF EVIDENCE.

The practice of attacking the sufficiency of an indictment by objecting to the introduction of any evidence thereunder is not recognized in the federal courts.

6. CRIMINAL LAW—WRIT OF ERROR—FORMAL DEFECTS—CURATIVE STATUTE.

The objection that an indictment in a federal court fails to show on its face that the grand jury which returned it came from the district in which it was found is one to a matter of form only and under Rev.

*Rehearing granted as to the sufficiency of the eighth count of the indictment.

St. § 1025 (U. S. Comp. St. 1901, p. 720), does not render the indictment insufficient, at least when first raised in an appellate court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, § 2627.]

7. INTERNAL REVENUE—INDICTMENT FOR VIOLATION OF OLEOMARGARINE ACT— SUFFICIENCY—"MANUFACTURER."

An indictment for carrying on the business of a manufacturer of oleomargarine without having paid the special tax therefor, based on the amendment to section 3 of the oleomargarine act added by Act May 9, 1902, c. 784, § 2, 32 Stat. 194 (U. S. Comp. St. Supp. 1907, p. 636), which provides that any person that sells, vends, or furnishes oleomargarine for the use and consumption of others "except to his own family table without compensation," and who shall color the same to resemble butter, shall be deemed a manufacturer, need not negative such exception which is in fact mere surplusage, since it does not exempt from the operation of the statute anything which would otherwise be within it.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 5, pp. 4346, 4358.]

8. SAME.

An indictment in the language of section 4 of the oleomargarine act of August 2, 1886, c. 840, 24 Stat. 209 (U. S. Comp. St. 1901, p. 2229), charging that the defendant at a certain time and place did unlawfully "carry on the business of a manufacturer of oleomargarine without having first then and there paid the special tax therefor as required by law," states all the elements of the offense and is sufficiently specific in the absence of a motion for a bill of particulars showing whether the defendant is charged with being a manufacturer in the ordinary sense under the original act or as defined in the amendment of May 9, 1902, c. 784, § 2, 32 Stat. 194 (U. S. Comp. St. Supp. 1907, p. 636).

9. SAME.

An indictment for a violation of section 6 of the oleomargarine act of August 2, 1886, c. 840, 24 Stat. 210 (U. S. Comp. St. 1901, p. 2230), by packing oleomargarine in packages which had previously been used for that purpose considered, and *held* sufficient.

10. SAME.

An indictment for using for packing oleomargarine stamped packages which had previously contained oleomargarine in violation of section 13 of the oleomargarine act of August 2, 1886, c. 840, 24 Stat. 211 (U. S. Comp. St. 1901, p. 2232), which prohibits such use, and provides that "any person who fraudulently gives away or accepts from another, or who sells, buys or uses for packing oleomargarine any such stamped package," shall be guilty of a criminal offense is good, at least after verdict, although it does not charge that such packages were "fraudulently" used.

Sanborn, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Missouri.

Shepard Barclay (Thomas T. Fauntleroy, on the brief), for plaintiff in error.

Jesse W. Barrett, Special Asst. U. S. Atty.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. The plaintiff in error (hereinafter, for convenience, designated the defendant) was indicted and convicted on various counts for the violation of certain provisions of the stat-

161 F.—43

ute respecting the manufacture and sale of oleomargarine. Act Aug. 2, 1886, c. 840, 24 Stat. 209; volume 2, p. 2228, c. 7b, U. S. Comp. St. 1901. Some of the counts on which convictions were had were predicated of the amendment to section 3 of said act. 32 Stat. 194, approved May 9, 1902, c. 784, 32 Stat. 194. The eighth count on which conviction was had was under section 6 of said chapter 7b. The tenth count on which the defendant was convicted was based upon another provision of the statute, hereinafter adverted to. The penalty imposed by the statute for the offenses embraced within the first five counts of the petition on which convictions were had is a fine, without imprisonment. The penalty imposed by section 6 of the act, on which the eighth count was founded, is a fine of not more than $1,000, and imprisonment not more than two years. Under the tenth count of the indictment the statute authorizes a fine of not more than $100 and imprisonment not more than one year. On each of the said first five counts, the court imposed a fine of $1,000. On the eighth count, the sentence was a fine of $1,000 and imprisonment in the United States penitentiary at Ft. Leavenworth for two years. On the tenth count, the sentence was a fine of $100 and 24 hours in jail.

At the opening of the trial, counsel for the defendant moved that the district attorney be required to elect upon which of the counts he would prosecute. The denial of this motion is assigned for error. The contention made is that the several offenses are so incongruous in law as not to admit of their joinder in the same indictment under the provisions of section 1024, Rev. St. (U. S. Comp. St. 1901, p. 720). The assumption of counsel is that all the counts, save the eighth, are for misdemeanors, while the eighth is a felony. If, however, all the offenses charged constitute only misdemeanors under the federal statute, they would be "of the same class of crimes or offenses," being violations of the same statute "defining butter,, also imposing a tax upon and regulating the manufacture, sale, etc., of oleomargarine"; and as such, it was permissible to join the several offenses in one indictment, setting forth the different acts in separate counts. Pointer v. U. S., 151 U. S. 396, 400, 14 Sup. Ct. 410, 411, 38 L. Ed. 208. The only limitation, which is addressed largely to the discretion of the trial court, upon such joinder of several offenses in one indictment is that their multiplication ought not to be so great as to tend "to confound the accused in his defense, or to prejudice him as to his challenges in the matter of being held out to be habitually criminal to the distraction of the attention of jury." In such case, the court might confine the indictment to so many of the offenses as would prevent such prejudice. McElroy v. U. S., 164 U. S. 80, 17 Sup. Ct. 31, 41 L. Ed. 355.

It is conceded that, inasmuch as the defendant could be sentenced under the eighth count to imprisonment in the penitentiary, the offense is an infamous crime, within the purview of the fifth amendment to the federal Constitution. Mackin et al. v. United States, 117 U. S. 348, 6 Sup. Ct. 777, 29 L. Ed. 909. It does not follow, however, that such result designates the offense a felony so as to take it out of "the same class of crimes or offenses" as those embraced in the

other counts of the indictment, which are admittedly mere misdemeanors.

Without reviewing the authorities, as this would be but a work of supererogation, the following summary may be regarded as the settled law within the federal jurisdiction: (1) There are no crimes or offenses cognizable in the federal courts, outside of maritime or international law or treaties, except such as are created and defined by acts of Congress; (2) where the statute designates and denounces a crime of the character or class which at common law was regarded as a felony without naming it as a misdemeanor, such as burglary, robbery, et id omne genus, which at common law had a well-defined meaning as a felony, these are classed as felonies; (3) although the offense proscribed by the state may at common law come within the category of a felony, yet if termed by the statute a misdemeanor, it is not to be regarded in federal procedure as a felony; (4) when Congress adopts a state statute or law as to an offense made a felony by the state law, it may be so treated by the federal court. Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89; Bannon et al. v. United States, 156 U. S. 464, 15 Sup. Ct. 467, 39 L. Ed. 494; Reagan v. United States, 157 U. S. 301, 15 Sup. Ct. 610, 39 L. Ed. 709; Considine v. United States, 112 Fed. 342, 50 C. C. A. 272; Hume v. United States, 118 Fed. 689, 698, 55 C. C. A. 407. Offenses proscribed under the oleomargarine act were unknown to the common law. They are solely the creatures of the act of Congress. As they are not designated as felonies by the statute, they are only statutory misdemeanors, entitling the defendant to only three peremptory challenges to the trial jury. Considine v. United States, supra. This assignment of error, therefore, must be overruled.

Error is assigned to the action of the court in overruling the defendant's challenge to certain jurors. The regular panel having been exhausted, the following occurred in making inquiries of the talesmen: Defendant's counsel asked, "Have any of you served upon a jury within the past year?" to which some of the jurors replied in the affirmative; who were then challenged for cause, "on the ground that they had served as jurors within the past year." The challenge was overruled, the court adding:

"Let the record show that these jurors have not served within twelve months. They cannot serve more than once in twelve months in any case, except during the present term of this court, they being members of the jury at this term."

The meaning of this was that the jurors had been in attendance at that term of court, and had, perhaps, been discharged, which did not disqualify them on the ground that they had been jurors within the 12 months preceding, within the meaning of the statute. Thereupon, counsel for the defendant said:

"Our contention is that they are not entitled to serve under the ruling of the Missouri Supreme Court."

From which it is manifest counsel conceived that the provisions of the state statute respecting the qualifications of jurors obtained in this respect in the federal courts. In other words, if a juror had served on a

state jury within the year next preceding, he would be disqualified from serving within that year on a jury in the federal court. This is a misconception of the law. It is the well-recognized rule that where Congress has spoken touching a matter of procedure or regulation within its constitutional competence, it is exclusive of any state statute or regulation of the subject-matter. Conn. Mut. Life Ins. Co. v. Schaefer, 94 U. S. 458, 24 L. Ed. 251; White v. Wansey, 116 Fed. 347, 53 C. C. A. 634; Travis v. Ins. Co., 104 Fed. 486, 43 C. C. A. 653. This rule has been held to apply to the matter of impaneling jurors. Walker et al. v. Collins et al., 50 Fed. 737, 1 C. C. A. 642; Pointer v. U. S., 151 U. S. 397, 14 Sup. Ct. 410, 38 L. Ed. 208; Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117. Congress has spoken on this subject. Section 812, vol. 1, Comp. St. 1901, p. 627, declares that:

"No person shall be summoned as a juror in any Circuit or District Court more than once in two years, and it shall be sufficient cause of challenge to any juror called to be sworn in any case that he has been summoned and attended said court as juror at any term of said court held within two years prior to the time of such challenge."

By the amendment of June 30, 1879, c. 52, § 2, 21 Stat. 43 (U. S. Comp. St. 1901, p. 624), the two years' provision was reduced to one year. Clearly enough, the statute has exclusive reference to the like service performed in the United States court, for it distinctly says the qualification shall extend "to any juror called to be sworn in any cause that he has been summoned and attended said court." Evidently, the term "said court" refers back to the Circuit or District Court of the United States where the jurors are called to serve. He who complains of an erroneous ruling must make that error appear affirmatively. The question asked and answered should have been followed up with the further inquiry as to whether or not the juror had been summoned and attended within the year preceding in that court. This objection, therefore, was rightly overruled.

Complaint is made of the action of the court in ruling that it devolved upon the defendant to show that he had paid the tax as a manufacturer of oleomargarine, if he so claimed. The government introduced the witness Buehrman, the deputy collector of revenue, at St. Louis, who testified that the defendant had made application for what is termed a license as a retailer of oleomargarine at certain places covered by the indictment. To this evidence, counsel for the defendant first objected on the ground that "there is no statement on which one of the different sorts of license the party engaged in that business was referred to." After some further colloquy between counsel and the court as to what he desired to argue, counsel said:

"He (the witness) is asked whether he ever made an application, and the question of the sort of application is what is concerned in this indictment. Our point is, that there is no allegation in this indictment that brings him within the terms of this section."

Thereupon the district attorney said:

"I have no intention at this time to ask Mr. Buehrman anything except to identify the stand at No. 117 Union Market and whether this man took it

out, to show his connection with the premises as a retail dealer and not as a manufacturer."

Thereupon, the applications were shown to counsel for the defendant who objected thereto, "because they did not relate to the matter charged in the indictment. It applies to a retail dealer." Thereat, the court said:

"It will be admitted for the purpose that it will tend to establish that he was engaged in business at that place. It is not for the purpose of proving that he is guilty of any offense. It will be admitted for that purpose only."

Afterward, before the conclusion of the evidence on the part of the government, this witness was recalled by the district attorney. In answer to the inquiry of the court as to what he wished to prove by the witness now, the district attorney answered, "just to prove the fact, which of course is the defense which will be set up, that this man never had a license." The court said that the government need not prove that. Counsel for defendant said that what he wanted the witness for was to have him produce the papers which he had formerly as a witness. The court said, "Whenever you want to make him your witness, you can do so;" upon counsel answering that he did not care to do that, the court said, "If you want to recall him to cross-examine him on what he testified to yesterday you may do so;" and that in view of the evidence which had been brought out, he would instruct the jury that they need not regard the application made. Thereat, counsel for the defendant said that he excepted, because he was entitled to show that the defendant was a retail dealer. The court said, "You may prove that by him." This colloquy discloses that the court distinctly stated to defendant's counsel that he might cross-examine the witness as to the issue made in chief, which counsel declined to do. He now complains especially of the remark by the court, "You may prove that by him." The contention made is that this was an invitation by the court to have the defendant, against his wishes, go upon the witness stand. We do not think this a fair implication. It purported nothing more than this: If the defendant has paid the tax, he can show the fact, not by going upon the stand as a witness and testifying thereto, but by merely exhibiting the receipt, presumptively in his possession. If lost or destroyed, he could show the fact of its issue by the proper book in the collector's office, which was in the building where the court was sitting. It has been the universal rule in the federal courts in proceedings by indictment for failure to pay the revenue tax to the government, authorizing the carrying on of the business by the defendant, for the government to show in the first place that the defendant had engaged in the business at a certain time and place, leaving him to produce his receipt for the tax, if he have one. This rule is expressed in Greenleaf on Evidence, vol. 1, § 79, as follows:

"Where the subject-matter of the negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party. Such is the case in civil or criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any persons, except those who are duly licensed therefor; as, for selling liquors, exercising a trade or profession, and the like."

Accordingly, it is the recognized rule that "Licenses are intrinsic matters of defense and must be shown by the party claiming under them." Wharton, Crim. Evidence (8th Ed.) § 332; State v. Lipscomb, 52 Mo. 33; State v. Hathaway, 115 Mo. 36, 21 S. W. 1081; Blackman v. Commonwealth, 124 Pa. 578, 17 Atl. 194.

The sufficiency of the allegations of the indictment is assailed in argument, especially the counts charging that the defendant carried on the business of a manufacturer of oleomargarine without having paid the required government tax. As these counts are alike, with the exception of the dates of the commission of the offense and the places where the business was conducted, it will be sufficient to present the first count which, after the caption, is as follows:

"The grand jurors of the United States, impaneled, sworn and charged at the term aforesaid of the court aforesaid, on their oath present that heretofore, to wit, between the 1st day of October, 1905, and the 1st day of November, 1906, Johnson R. Morris, at the division and district aforesaid, and within the jurisdiction of said court, did then and there unlawfully, at the premises known as No. 1117 St. Ange avenue, in the city of St. Louis, Missouri, carry on the business of a manufacturer of oleomargarine without having first then and there paid the special tax therefor as required by law, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

Section 4 of the statute which defines the offense is as follows:

"That every person who carries on the business of a manufacturer of oleomargarine without having paid the special tax therefor, as required by law, shall, besides being liable to the payment of the tax, be fined," etc.,

No motion to quash or demurrer was interposed to any of the counts of the indictment. When the trial began counsel for defendant objected to the introduction of any evidence, "because each and all of the counts fail to state in a proper manner any charge which would constitute an offense against the laws of the United States." This method of attacking the sufficiency of an indictment is not recognized in this jurisdiction. Shepard v. United States, 85 C. C. A. ——, 160 Fed. 584; United States v. Harmon (D. C.) 45 Fed. 419; 1 Wharton, Crim. Law (7th Ed.) 519, 524, 525; State v. Risley, 72 Mo. 609. The only questions raised in the motion in arrest of judgment touching the sufficiency of the indictment are, (1) that the indictment does not state any offense against the laws of the United States, and (2) that each count of the indictment fails to state the facts constituting a crime or offense against the laws of the United States. These objections are no broader than their terms. No specific defect is suggested.

In the brief of counsel, specific objection is made that the indictment on its face does not show that the grand jury came from the district in which the indictment was found. The record and caption do show that the indictment was presented to the court in the Eastern Division of the Eastern District of Missouri, and that the defendant committed the alleged offense in said division of the district. No challenge to the array was made, nor was this objection raised at any time, or any place on the record as it should have been. Caha v. United States, 152 U. S. 221, 14 Sup. Ct. 513, 38 L. Ed. 415. This objection is not specified in the motion in arrest, nor is any such de-

fect specified in the assignment of errors. As the objection goes merely to the matter of the form of indictment, if it were conceded to be important, which we do not decide, it was cured by the provisions of section 1025 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 720). Especial criticism was made in argument by the learned counsel for the defendant respecting the sufficiency of the counts, which the evidence shows were predicated of the amendment to section 3 of the oleomargarine act. The objections are (1) that the indictment does not negative the exception contained in the statute, to wit, "except to his own family table, without compensation," and (2) the failure to specify that the manufacturing consisted in adding to or mixing with such oleomargarine any artificial coloration that caused it to look like butter of any shade of yellow. Said amendment is as follows:

"And any person that sells, vends, or furnishes oleomargarine for the use and consumption of others, except to his own family table, without compensation, who shall add to or mix with such oleomargarine any artificial coloration that causes it to look like butter of any shade of yellow, shall also be held to be a manufacturer of oleomargarine within the meaning of said act and subject to the provisions thereof."

That is to say, this amendment was added to section 3, of the original oleomargarine act of August 2, 1886.

The exception is peculiar, if not a misconception. Clearly enough, it has no relation to the act of selling, as it would be a legal absurdity to speak of a person selling, or vending "for his own family table," as the law expects a man to provide for his own table. And it would be more absurd to speak of a person selling an article without compensation, as the term "sell" implies for a consideration. The exception, therefore, has exclusive reference to the word "furnished." It would challenge our conception of the constitutional powers of Congress for it to undertake to tax a person as a manufacturer of oleomargarine whose housewife, as a matter of fancy or taste, should color white oleomargarine so as to give it the hue of yellow butter, for the sole use of the family table. Even as applied to the state, in the exercise of its police power in the matter of regulation of oleomargarine, it has exclusive reference to its sale within the state. Mr. Justice Harlan, in Plumley v. Mass., 155 U. S. 468, 15 Sup. Ct. 156, 39 L. Ed. 223, speaking of the oleomargarine act of the state of Massachusetts, said:

"If any one thinks that oleomargarine not artifically colored so as to cause it to look like butter is as palatable or is as wholesome for the purpose of food as pure butter, he is at liberty under the statute to manufacture in that state, or to sell it there in such manner as to inform the customer of its real character. He is only forbidden to practice in such matters a fraud upon the general public. The statute seeks to suppress false pretenses and to permit fair dealing in the sale of an article of food. It compels the sale of oleomargarine for what it really is by preventing its sale for what it is not."

In United States v. De Witt, 9 Wall. 41, 19 L. Ed. 593, it was held that the provision of the internal revenue act of March 2, 1867, c. 169, § 29, 14 Stat. 484, which undertook to make it a misdemeanor punishable to mix for sale naptha and illuminating oils or to sell or to offer such mixture for sale, etc., was a mere police regulation

within the exclusive jurisdiction of the state respecting its internal affairs. The sole justification for the regulation by Congress of such matters is that it comes within the taxing power as a means for raising internal revenue for support of the general government. The tax in question is for carrying on the business of a manufacturer and vender of oleomargarine, and the fee or tax is to license the party, in so far as the general government is concerned, to engage in such business. The requirement respecting labeling, packing, etc., is intended to protect the buyer from being deceived as to what he is really purchasing, and to prevent devices to avoid paying the tax. The statute in question (section 3), declares that "every person who manufactures oleomargarine for sale shall be deemed a manufacturer of oleomargarine," and "every person who sells oleomargarine in less quantities than ten pounds at one time shall be regarded as a retail dealer in oleomargarine." Clearly enough, this indicates that he alone was to be regarded as a manufacturer of oleomargarine who manufactures for sale. Congress is in no wise concerned in what the private citizen may use on his family table, or how he shall prepare it. Evidently, the exception in question was interpolated through an over-zealous regard for the reserved rights of the citizen. But it excepted from the operation of the statute nothing for which the defendant could have been prosecuted as for the violation of a federal statute. And, therefore, it may be treated as mere surplusage, and disregarded in framing an indictment, upon the section for carrying on the business of a manufacturer of oleomargarine without having paid the government tax.

Be this as it may, this objection should be overruled on the authority of Ledbetter v. United States, 170 U. S. 606, 611, 18 Sup. Ct. 774, 776, 42 L. Ed. 1162, which was an indictment against the defendant for carrying on the business of a retail dealer in liquor without having paid the government tax. In discussing the provision contained in section 18 of the statute in question, in defining a retail dealer in liquor, the court adverted to the fact that said section contained an exception as to persons who sell or offer for sale spirits, wine, etc., "otherwise than as hereinafter provided in less quantities than five wine gallons at the same time, shall be regarded as a retail dealer in liquors." It was conceded that the words "otherwise than as hereinafter provided," introduced an exception into the general words of the definition, which suggested a doubt as to whether the words being a part of the section, in the enacting clause, should not have been negatived by the indictment. After saying that the words of the exception probably referred to wholesale liquor dealers, brewers, or others who are either exempt from taxation or pay a different tax, the court said:

"Upon the other hand, when it is averred in the language of section 16 that the defendant carried on the business of a retail liquor dealer without payment of a special tax, the description, though brief, was comprehensive, although section 18 may be referred to as defining the offense with more particularity. But we do not think it necessary to charge the offense in the language of the definition. If Congress had not defined a retail liquor dealer, it would be proper to resort to a dictionary for a definition of this term; but

it is no more necessary in one case than in another to charge the offense in the language of the definition."

The foregoing decision also meets the general objection as to the sufficiency of the counts of the indictment in question, in simply charging that the defendant carried on the business of a manufacturer of oleomargarine. The indictment in that case, like the one at bar, followed the words of the statute, that the defendant "did then and there willfully, etc., carry on the business of a retail liquor dealer without having paid the special tax thereunder as required by law." The objection was there made that the indictment should have set out the acts done which constituted the violation of the statute. While conceding that it might be a proper course in framing the indictment to so specialize, it held that the allegation in the language of the statute creating the offense was sufficient. The court said:

"The cases wherein it is held that an indictment in the exact language of the statute is not sufficient are those wherein the statute does not contain all of the elements of the offense as in United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135, where a statute against passing counterfeit money failed to aver the scienter; but where the statute sets forth every ingredient of the offense, an indictment in its very words is sufficient, though that evidence be more fully defined in some other section." U. S. v. Gooding, 12 Wheat. 460, 473, 6 L. Ed. 693; U. S. v. Wilson, Baldw. 78, 119, Fed. Cas. No. 16,730; Hess v. State, 5 Ohio, 5, 22 Am. Dec. 767; Harrington v. State, 54 Miss. 490, 494. Notwithstanding the cases above cited, in our courts the general rule still holds good that upon an indictment for a statutory offense, the offense may be described in the words of the statute and it is for the defendant to show that greater particularity is required by reason of the omission from the statute of some element of the offense. Where the statute completely covers the offense, the indictment need not be made more complete by specifying particulars elsewhere obtained."

The more serious trouble in respect to the allegations of the different counts arises out of the fact that said amendment of 1902 adds another and different manner of constituting a manufacturer of oleomargarine. So it might well be said by a defendant, charged in general terms with carrying on the business of a manufacturer, that it does not reasonably advise him in advance as to which of said statutes it was the purpose of the prosecutor to invoke. This question could not be raised in advance by demurrer, as the indictment on its face would be good under section 4 of the original statute. The clear course for the defendant in such situation to pursue, for his proper protection against unpreparedness and surprise, is by timely motion to compel the prosecutor to furnish him with a bill of particulars. This was aptly and comprehensively expressed by Judge Van Devanter in Rinker v. United States, 151 Fed. 759, 81 C. C. A. 383, as follows:

"When an indictment sets forth the facts constituting the essential elements of the offense with such certainty that it cannot be pronounced ill upon motion to quash or demurrer, and yet is couched in such language that the accused is liable to be surprised by the production of evidence for which he is unprepared, he should in advance of the trial, apply for a bill of the particulars; otherwise, it may properly be assumed as against him that he is fully informed of the process of the case which he must meet upon the trial."

See, also, Putnam v. United States, 162 U. S. 689, 16 Sup. Ct. 923, 40 L. Ed. 1118; Dunbar v. United States, 156 U. S. 192, 15 Sup. Ct.

325, 39 L. Ed. 390; Durland v. United States, 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709; Dunlop v. United States, 165 U. S. 491, 17 Sup. Ct. 375, 41 L. Ed. 799; Tubbs v. United States, 105 Fed. 59, 44 C. C. A. 357.

Unquestionably the safer course, and the one just to the defendant, for the framer of an indictment under the statute in question to pursue, is by proper averments to clearly indicate on which provision of the statute the indictment is founded. But if the pleader employs the language of said section 4 in framing the indictment, the defendant may not stand mute, as to this, and take the chance of an acquittal, and then, after conviction, be heard for the first time to say he was not sufficiently advised as to the specific charge he was called upon to meet.

The eighth count of the indictment was predicated of section 6 of the oleomargarine act. Without quoting it in full, it is sufficient, for the purpose of this case, to say that it provides regulation for the packing of oleomargarine, prescribing penalties for packing in any other manner. Among such requirements is that the package or receptacle shall be new, not before used for such purpose, without any reference to whether there are stamps, marks, or brands on it. The failure to observe this specific requirement constitutes the offense denounced by the sixth section. The indictment charges that at a given time and place, the defendant "did then and there unlawfully pack colored oleomargarine in firkins, tubs, and other wooden packages, which had theretofore been used for that purpose, he, the said Johnson R. Moris, then and there at the time of so packing the said colored oleomargarine in said packages, which had theretofore been used for that purpose, well knowing that said packages had theretofore been used for the purpose of packing colored oleomargarine, contrary to the form of the statute," etc. Without stating the criticisms made by counsel for the defendant, it is sufficient to say that the charge made was so direct as to leave no reasonable doubt in the mind of the defendant as to what the offense was which he was called to answer. Nurnberger v. United States (C. C. A.) 156 Fed. 721; Shepard v. United States, supra.

The tenth count of the indictment was evidently predicated of the last clause of section 13 of the act. The whole section is as follows:

"Sec. 13. That whenever any stamped package containing oleomargarine is emptied, it shall be the duty of the person in whose hands the same is to destroy utterly the stamps thereon; and any person who willfully neglects or refuses so to do shall for each such offense be fined not exceeding fifty dollars, and imprisoned not less than ten days nor more than six months. And any person who fraudulently gives away or accepts from another, or who sells, buys, or uses for packing oleomargarine, any such stamped package, shall for each such offense be fined not exceeding one hundred dollars and be imprisoned not more than one year."

The charge in the indictment is based upon the subdivision of the last clause which inhibits the use for packing oleomargarine in any such stamped package. After laying the time and venue, it charges that the defendant, "did then and there unlawfully, knowingly, and willfully use for packing oleomargarine twenty-five certain stamped pack-

ages which had theretofore been packed with colored oleomargarine and stamped denoting the payment of the special tax of ten cents per pound upon colored oleomargarine, as required by law. He, the said Johnson R. Morris, then and there at the time of so packing the oleomargarine in said twenty-five stamped packages, then and there well knowing that the said twenty-five stamped packages had theretofore contained colored oleomargarine and had been emptied of said colored oleomargarine," etc. The only criticism made upon the charge deserving of consideration is the omission of the word "fraudulently" employed in the first part of said clause. It is, in the first place, doubtful if this term was intended to qualify any other act than that of giving away or accepting from another any such package, to which act it would have some intelligible application. As it is not repeated when it comes to the act of selling, buying, or using such package, it must be supplied by implication. The two acts of giving away a stamped package and using it are quite different. The using of such tub unlawfully, knowingly, and willfully, is itself an act harmful to the government independently of the intent with which it is done. Aside, however, from this, the omission of the word "fraudulently" in the indictment was not raised, if at all, until after verdict, under the general phraseology of the motion in arrest of judgment. When the defendant was charged with unlawfully, knowingly, and willfully doing the particular act, he was certainly advised of the nature and character of the offense with which he was charged. The omission of the descriptive term "fraudulently" is cured after verdict by the provision of section 1025 of the statute. Clement v. United States, 149 Fed. 305, 79 C. C. A. 243; Stearns v. United States, 152 Fed. 901, 82 C. C. A. 48; Dunbar v. United States, 156 U. S. 192, 15 Sup. Ct. 325, 39 L. Ed. 390; Rosen v. United States, 161 U. S. 30, 16 Sup. Ct. 434, 40 L. Ed. 606; Evans v. United States, 153 U. S. 590, 14 Sup. Ct. 934, 38 L. Ed. 830; Shepard v. United States, 85 C. C. A. ——, 160 Fed. 584.

The cumulative sentences imposed upon the defendant are severe; but as the several punishments are within the limitations of the statute we cannot on this writ of error modify or mitigate them. The severity of them finds its extenuation in the fact that the evidence shows the defendant systematically, for a considerable time prior to the indictment, engaged in the business of buying in Chicago white oleomargarine, amounting to over $100,000 worth, on which the tax was only $\frac{1}{4}$ per cent., shipping it to St. Louis, where it was distributed to his several houses or places of business and subjected by him, or under his direction, to a coloring process, giving it the hue of yellow butter, on which the tax was ten cents, whereby he defrauded the Government out of large sums of revenue.

Finding no reversible error in the record, the judgment of the District Court must be affirmed.

SANBORN, Circuit Judge (dissenting). In Ledbetter v. United States, 170 U. S. 606, 18 Sup. Ct. 774, 42 L. Ed. 1162, the Supreme Court held that an indictment which charged in the words of the statute that the defendant did unlawfully carry on the business of a re-

tail liquor dealer without having paid the special tax therefor was sufficient when there was only one way under the statutes in which he could be a retail liquor dealer, and that way was declared by the statute to be by selling or offering for sale foreign or domestic distilled spirits or malt liquors otherwise than as therein provided in less quantities than five gallons at the same time. But the court also said at page 610 of 170 U. S. and page 775 of 18 Sup. Ct. (42 L. Ed. 1162):

> "We have no disposition to qualify what has already been frequently decided by this court, that where the crime is statutory it must be charged with precision and certainty, and every ingredient of which it is composed must be clearly and accurately set forth, and that even in the cases of misdemeanors the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged. United States v. Cook, 17 Wall. 168, 174, 21 L. Ed. 538; United States v. Cruikshank, 92 U. S. 542, 562, 23 L. Ed. 588; United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135; United States v. Simmons, 96 U. S. 360, 24 L. Ed. 819; United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Pettibone v. United States, 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830."

If, as in the Ledbetter Case, the statute had prescribed a single way by which a defendant could constitute himself a manufacturer of oleomargarine a charge of carrying on the business of a manufacturer of oleomargarine would undoubtedly have been sufficient to sustain a conviction upon the proof that the defendant pursued that way, but the statutes applicable to the case at bar provided, "manufacturers of oleomargarine shall pay $600. Every person who manufactures oleomargarine for sale shall be deemed a manufacturer of oleomargarine." Section 3. "That every person who carries on the business of a manufacturer of oleomargarine without having paid the special tax therefor as required by law shall, besides being liable to the payment of the tax, be fined not less than one thousand and not more than five thousand dollars." Section 4. Act of 1886, c. 840, 24 Stat. 209 (U. S. Comp. St. 1901, p. 2229). "And any person that sells, vends or furnishes oleomargarine for the use or consumption of others, except to his own family table, without compensation, who shall add to or mix with such oleomargarine any artificial coloration that causes it to look like butter of any shade of yellow, shall also be held to be a manufacturer of oleomargarine within the meaning of said act and subject to the provisions thereof." Act of May 9, 1902, § 2, 32 Stat. 193 (U. S. Comp. St. Supp. 1907, p. 636).

Here were two distinct offenses punishable by like penalties, (1) carrying on the business of manufacturing oleomargarine out of the raw materials of which it is composed without paying the special tax, and (2) carrying on the business, without paying the special tax, of coloring and selling oleomargarine which had theretofore been manufactured out of the raw materials by others. The charge in each of the first six counts of the indictment was that the defendant did unlawfully "carry on the business of a manufacturer of oleomargarine." There was no proof that he ever manufactured oleomargarine, but there was some evidence that he colored oleomargarine which others had previously manufactured, and sold it. At the close of the trial

counsel for the defendant requested the court to instruct the jury to return a verdict in his favor on each of these counts, upon the ground that there was no evidence to sustain them. The court denied this request as to all except the fourth count and charged the jury that if they found that the defendant colored and sold oleomargarine without paying the special tax they might find him guilty. To these rulings the defendant excepted.

The following declarations of the law upon this subject are extracted from the opinions of the Supreme Court in the cases which are cited and reaffirmed in the Ledbetter Case. "No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment or implication, and the charge must be made directly and not inferentially, or by way of recital. * * * The doctrine invoked by the solicitor general that it is sufficient in an indictment upon a statute to set forth the offense in the words of the statute does not meet the difficulty here. Undoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense coming under the general description with which he is charged." United States v. Hess, 124 U. S. 483, 487, 8 Sup. Ct. 571, 573, 31 L. Ed. 516. "It is an elementary principle of criminal pleading that, where the definition of an offense, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition, but it must state the species—it must descend to particulars.' 1 Arch. Cr. Pr. and Pl. 291. The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances." United States v. Cruikshank, 92 U. S. 542, 558, 23 L. Ed. 588. "A rule of criminal pleading, which at one time obtained in some of the circuits, and perhaps received a qualified sanction from this court in United States v. Mills, 7 Pet. 138, 8 L. Ed. 636, that an indictment for a statutory misdemeanor is sufficient if the offense be charged in the words of the statute, must, under more recent decisions, be limited to cases where the words of the statute themselves, as was said by this court in United States v. Carll, 105 U. S. 611, 612, 26 L. Ed. 1135, 'fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' The crime must be charged with precision and certainty, and every ingredient of which it is composed must be accurately and clearly alleged. United States v. Cook, 17 Wall. 168, 174, 21 L. Ed. 538; United States v. Cruikshank, 92 U. S. 542, 558, 23 L. Ed. 588. 'The fact that the statute in question, read in the light of the common law,

and of other statutes on the like matter, enables the court to infer the intent of the Legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent.' United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135." Evans v. United States, 153 U. S. 584, 587, 14 Sup. Ct. 934, 38 L. Ed. 830.

The offenses of which the defendant was found guilty under counts 1, 2, 3, 5, and 6 of the indictment were that he colored and sold oleomargarine which had been manufactured by others. The averment of the indictment that the defendant did "carry on the business of a manufacturer of oleomargarine" was a sufficient charge that he manufactured oleomargarine out of the raw materials, that he made oleomargarine out of substances which were not oleomargarine before he manufactured it out of them, for this is the common, ordinary, and rational meaning of the words of the allegation. But did the averment that the defendant did "carry on the business of a manufacturer of oleomargarine" charge him with the offense of which he was convicted, the offense of purchasing oleomargarine which had been manufactured by others, of coloring it and of selling it without paying the special tax? The elements of the latter offense were coloring and selling oleomargarine which had been made by others, the elements of the offense charged in the indictment were transforming the raw materials into oleomargarine—manufacturing oleomargarine. If the indictment had used the words of the statute of 1902, which described and first made the coloring and vending of oleomargarine without paying the special tax an offense, it would probably have been sufficient, but it used the words of the statute of 1886, which in no way set forth or intimated the charge of any other offense than manufacturing oleomargarine. In my opinion these counts of this indictment do not fall under the rule in Rinker v. United States, 151 Fed. 755, 759, 81 C. C. A. 379, 383, that "when an indictment sets forth the facts constituting the essential elements of the offense with such certainty that it cannot be pronounced ill upon motion to quash or demurrer, and yet is couched in such language that the accused is liable to be surprised by the production of evidence for which he is unprepared, he should, in advance of the trial, apply for a bill of particulars; otherwise it may properly be assumed as against him that he is fully informed of the precise case which he must meet upon the trial"; because the indictment does not set forth any of the facts constituting the essential elements of the offense of which this defendant was convicted, and because these counts of the indictment are not ambiguous, because they clearly set forth another offense of which there was no proof, they charge the offense of manufacturing oleomargarine, and they neither aver nor intimate the offense of coloring and vending oleomargarine manufactured by others, or any of the essential elements of that offense. Neither the indictment nor the words of the statute used therein "fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." Evans v. United States, 153 U. S. 587, 14 Sup. Ct. 936, 38 L. Ed. 830; nor was it "accompanied with such a statement of the facts and circumstances as will inform

the accused of the specific offense coming under the general description with which he is charged." United States v. Hess, 124 U. S. 483, 487, 8 Sup. Ct. 571, 573, 31 L. Ed. 516. The Supreme Court in the Ledbetter Case said:

"Where the crime is a statutory one it must be charged with precision and certainty, and every ingredient of which it is composed must be clearly and accurately set forth."

The ingredients of the offense of which the defendant was convicted were coloring oleomargarine and selling it without paying the special tax. None of these ingredients were either set forth, or averred, or suggested by the indictment.

As I read and understand the first six counts of this indictment in the light of the opinions of the Supreme Court to which reference has been made, the defendant was clearly charged thereby with manufacturing oleomargarine out of the raw materials without paying the special tax and there was no proof of that offense. He was convicted of coloring and selling oleomargarine, and there was no charge of that offense. Proof without averment is as futile as averment without proof, and the court below, in my opinion, should have instructed the jury to return a verdict for the defendant on counts 1, 2, 3, 5, and 6 of the indictment, and the judgments below upon them should be reversed, and a new trial should be granted.