## RUPERT v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 5, 1910.)

### No. 3;052.

1. INDICTMENT AND INFORMATION (§ 110*)—SUFFICIENCY OF ACCUSATION—INDICTMENT IN LANGUAGE OF STATUTE.

An indictment charging a statutory crime in the language of the statute is sufficient when the statute fully, directly, and with certainty sets forth all the elements of the crime.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 289–294; Dec. Dig. § 110.*]

2. GAME (§ 9*)—SHIPMENT IN VIOLATION OF GAME LAWS—FEDERAL STATUTE—INDICTMENT FOR VIOLATION.

Under the Game Law of Oklahoma Territory (Wilson's Rev. & Ann. St. 1903, §§ 3069, 3078) which permits the killing of quail between October 15th and February 1st following but prohibits the shipping of quail from the territory at any time, an indictment charging a violation of the Lacey Act of May 25, 1900, c. 553, § 3, 31 Stat. 188 (U. S. Comp. St. 1901, p. 3181), by knowingly delivering to a carrier for transportation from the territory into another state the dead bodies of quail killed in the territory in violation of its laws, is sufficient where it avers that such quail were killed "with the intent and for the purpose of being shipped and transported out of the territory," and need not allege the months in which such quail were killed. The same is also true of an indictment under section 4 of the act for failing to mark the packages containing the bodies of such quail.

[Ed. Note.—For other cases, see Game, Cent. Dig. § 9; Dec. Dig. § 9.*]

3. GAME (§ 3½*)—POWER OF STATE TO PROTECT AND REGULATE—PROHIBITION OF SHIPMENT OUT OF STATE.

A state or territory has authority to provide by legislation that wild game, such as quail, shall not be shipped out of the state or territory even though the game was killed during the open season.

[Ed. Note.—For other cases, see Game, Cent. Dig. § 2; Dec. Dig. § 3½.*]

4. COMMERCE (§ 61*)—.FEDERAL STATUTE PROHIBITING INTERSTATE SHIPMENT IN VIOLATION OF LOCAL LAWS—CONSTITUTIONALITY.

The provisions of the Lacey Act of May 25, 1900, c. 553, §§ 3, 4, 31 Stat. 188 (U. S. Comp. St. 1901, p. 3181), prohibiting the shipment or transportation in interstate commerce of game killed in violation of the local laws, and requiring all packages containing game shipped in interstate commerce to be plainly marked showing the name and address of the shipper and the nature of the contents, and making the violation of such provisions a criminal offense, are within the powers of Congress, and constitutional and valid.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 81–84, 89; Dec. Dig. § 61.*]

In Error to the District Court of the United States for the Western District of Oklahoma.

Paris N. Rupert was convicted on indictments for criminal offenses; and he brings error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

February 27, 1907, the grand jury of Blaine county, Okl. T., returned four indictments against defendant Rupert. In one case (No. 43) the charging part of the indictment is: "That on, to wit, the thirtieth day of November, in the year of our Lord one thousand nine hundred and five, in said county, and within the jurisdiction of said court, Paris N. Rupert, then and there being, did then and there, unlawfully, willfully and feloniously deliver to the Frisco Railroad Company, a common carrier, for transportation out of said territory and to the city of Chicago in the state of Illinois, the dead bodies of quail, which said quail had theretofore been killed in the Territory of Oklahoma in violation of the laws of said territory and with the intent and purpose of being shipped and transported out of said territory in violation of the laws of said territory." Except as to the date of the crime, and the railway to which the delivery was made, the indictment in case No. 45 is like that in case No. 43.

The charging part of the indictment in case No. 44 is as follows: "That on, to wit, the 30th day of November, in the year of our Lord, one thousand nine hundred and six, in said county, and within the jurisdiction of said court, Paris N. Rupert, then and there being, did then and there unlawfully, willfully and feloniously deliver to the Rock Island Railroad Company, a common carrier, to be shipped and transported by Interstate Commerce 139 boxes and packages containing the dead bodies of quail which had theretofore been killed in the territory of Oklahoma in violation of the laws of said territory, and with the intent and for the purpose of being shipped and transported out of the territory of Oklahoma and to the city of Chicago, in the state of Illinois, without having said boxes and packages plainly and clearly marked so that the address of the shipper and the nature and contents of the packages could be readily ascertained on the inspection of the outside of such boxes and packages."

The indictment in case No. 46 is the same as that in case No. 44 except as to the number of boxes of quail, and the railway company to which delivered.

After Oklahoma was admitted as a state, the cases were remitted to the District Court of the United States for the Western district in that state. There were demurrers to the indictment, which were overruled, pleas of not guilty entered, and the four cases were consolidated for trial purposes. A jury trial resulted in a verdict of guilty in every of the four cases. Motions for new trial, and motions in arrest of judgment were overruled, and judgment of a fine of one hundred dollars and costs were imposed against the defendant in each case. A writ of error was sued out to reverse the judgments.

William O. Woolman (C. R. Buckner, on the brief), for plaintiff in error.

John Embry, U. S. Atty.

Before HOOK and ADAMS, Circuit Judges, and McPHERSON, District Judge.

SMITH McPHERSON, District Judge (after stating the facts as above).. The record contains that which purports to be the testimony, the charge of the court, instructions refused, objections, rulings and exceptions, with recitals of what occurred during the trial, including motions for a new trial. None of these are evidenced by a bill of exceptions, and are, therefore, not of record. We cannot consider any of them. The office and necessity of a bill of exceptions in all actions at law and in criminal cases have long been recognized by the profession and required by all Appellate Courts. The practice, whatever it is, in Oklahoma as to bills of exception in actions at law and criminal cases, is of no effect here. The laws of the state do not control as to this. The common law, in conjunction with the United States Statutes, only must prevail. Michigan Insurance Bank v. Eldred, 143 U.

S. 293, 298, 9 Sup. Ct. 690, 32 L. Ed. 1080; Fishburn v. R. R., 137 U.
S. 60, 11 Sup. Ct. 8, 34 L. Ed. 585; The Chateaugay Company, Peti-
tioner, 128 U. S. 544, 553, 9 Sup. Ct. 150, 32 L. Ed. 508. Revised
Statutes of United States, § 953, as amended by Act June 5, 1900, c.
717, § 1, 31 Stat. 270 (U. S. Comp. St. 1901, p. 696). Courts make
the records, and the trial judge must sign the bill of exceptions. The
clerk is without authority to certify up anything, except that made of
record by the orders of the court.

It therefore follows that the only questions we can consider are
those pertaining to the indictment. The demurrers are to the same
effect as the motion in arrest of judgment. And the motion in arrest
of judgment is the same in every of the four cases, and is as follows:

"(1) That the indictment filed herein does not state facts sufficient to con-
stitute a crime known and punishable under the laws of the United States.

"(2) That the law on which said indictment is based is unconstitutional and
void."

It appears from the foregoing that in two of the cases the indict-
ments charge that the defendant willfully and unlawfully delivered
quail to a railway company for transportation from points within Ok-
lahoma to Chicago, Ill., which quail had theretofore been killed in
Oklahoma in violation of the laws of said territory.

The indictments in the other two cases charge defendant with will-
fully and unlawfully delivering to a railway boxes containing the dead
bodies of quail which had theretofore been unlawfully killed within
the territory, which delivery was for the purpose of shipping said quail
by interstate shipments, to wit, to Illinois, and without having the
boxes marked showing the contents.

Section 3 of the act of Congress of 1900 (Lacey act) provides that
it shall be unlawful to ship from one state or territory to another state
or territory any animals or birds when such animals or birds have been
killed in violation of the laws of the state. Act May 25, 1900, c. 553,
31 Stat. 188 (U. S. Comp. St. 1901, p. 3181).

The local laws of the territory of Oklahoma allowed quail to be
killed during certain months (from October 15th to February 1st).
But the Oklahoma statutes prohibited the exportation of quail at any
time. Therefore it follows that it was unnecessary for the indictment
to allege in which months the quail were killed. It was lawful to kill
quail in the territory for use within the territory during three and one-
half months of every year. But it was unlawful every day of the year
to kill quail for shipment elsewhere. So that any date within the
statute of limitations could be alleged in the indictment. Wilson's
Rev. & Ann. St. Okl. 1903, §§ 3069, 3078.

The purpose of the Lacey act as expressed in the statute (section 1)
"is to aid in the restoration of such birds in those parts of the United
States adapted thereto where the same have become scarce or extinct."
Section 4 of that statute provides that all packages containing such
dead birds, when shipped by interstate commerce, shall be plainly and
clearly marked, so that the nature of the contents may be readily as-
certained on the inspection of the outside of such packages. Or, to
restate, it was unlawful to kill at any time, if for the purpose of ex-
port, and such were the indictments in two of the cases. And it was

unlawful to export without marking the packages making known the contents, and such were the other two indictments.

The familiar rule that an indictment in charging a statutory crime need only follow the language of the statute will suffice, particularly when the words of the statute, fully, directly, and with certainty, set forth all the elements of the crime. Evans v. U. S., 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 30; Cochran v. U. S., 157 U. S. 286, 290, 15 Sup. Ct. 628, 39 L. Ed. 704; Ledbetter v. U. S., 170 U. S. 606, 609, 18 Sup. Ct. 774, 42 L. Ed. 1162. There are exceptions to this form of pleading, when the statute does not with definiteness cover all the elements of the crime. Keck v. U. S., 172 U. S. 434, 19 Sup. Ct. 254, 43 L. Ed. 505. For a discussion of this question, and the holding by this court, see the case of Morris v. United States, as reported in 161 Fed. 672, 680, 88 C. C. A. 532. The contention of counsel for plaintiff in error that the recitals are not sufficiently specific is not in accord with the authorities. The indictments are good as to form.

Quail belong to the state or territory, or rather the people collectively thereof, and are subject to the local laws as to killing, and the times therefor, and the shipment. These propositions have been put at rest by the Supreme Court. Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793; Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385. It is for the state Legislature to say when quail may be killed. It may provide that they shall not be killed at any time. It may provide that they may be killed for use at home only, and not killed for shipment out of the state, which if allowed would result in the extinguishment locally of such game. And no one doubts the validity of game laws, which prohibit killing of game on the lands of another. It is quite likely that every state of the Union has such laws, and such was the common law. The individual having no ownership in the game, and allowed at certain times, if at all, to kill the same at certain places, for particular uses only, it does not become the general subject of commerce free from all inhibitions. And as Congress is vested with the power under the commerce clause to regulate commerce between the states, it has the power to provide that there shall not be unrestrained commercial intercourse.

Thus in Cook v. Marshall County, 196 U. S. 261, 25 Sup. Ct. 233, 49 L. Ed. 471, it was held that a state law limiting the right to sell cigarettes would be upheld, even though brought in from another state. This was so held, because the prohibition of the sale was a valid exercise of the police power of the state, and the commerce clause cannot be used to override that which is clearly within the police power of the state.

And so in Manchester v. Massachusetts, 139 U. S. 240, 11 Sup. Ct. 559, 35 L. Ed. 159, a statute regulating the taking of fish was upheld and enforced, when it was sought to avoid the statute by showing that the fish were carried to the ports of other states on a vessel licensed under national authority. And a like holding was made as to oysters in McCready v. Virginia, 94 U. S. 391, 24 L. Ed. 248. It is one thing to prohibit property from being carried out of the state, and another to prohibit property from being brought into the state. And yet in Re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, the Supreme

Court upheld the act of Congress of August 8, 1900, commonly called the "Wilson Bill," which makes intoxicating liquors when brought into the state subject to the local laws. Such being the holdings, it surely follows that a congressional enactment like the Lacey act, which makes it a crime to carry out of the state that which can be and is lawfully prohibited by local or state laws, must be upheld.

Our holdings are:

(1) The territory of Oklahoma had the authority to provide by legislation, as it did, that wild game, such as quail, should not be shipped out of the state, even though the game was killed during the open season.

(2) The act of Congress is valid wherein it is declared that the shipment out of the territory in violation of the territorial law constitutes a crime under the national law.

(3) And to aid in the detection of such crimes, Congress had the authority to provide that all such interstate shipments should be plainly marked so that any person by a casual inspection would know the contents of the package.

All four of the judgments brought to this court for review by writ of error are affirmed; and it is so ordered.